### THE MARTIN-BROWN COMPANY v. H. M. HENDERSON.

#### No. 1797.

1. **Parties to Suit—Trustee—Conversion.**—A trustee to whom goods have been conveyed for the benefit of preferred creditors, and who is in actual possession thereof at the time they are attached by other creditors, may sue alone for their taking and conversion. Adhering to Sanger Bros. v. Henderson, 1 Texas Civil Appeals, 412.

2. **Trust Deed—Acceptance by One Creditor.**—Upon the acceptance by any one of the creditors secured by a preferential deed of trust, the instrument takes effect as to him.

3. **Same—Measure of Damages for Conversion.**—The measure of damages which a trustee may recover for a wrongful taking and conversion of the trust property by attachment is the full value of the property.

4. **Same—Proof of Secured Debts.**—In an action by the trustee for preferred creditors against other attaching creditors for conversion of the property, the trust deed itself, where there is no effort to show that any of the debts secured by it are fictitious, affords sufficient prima facie proof of such debts.

5. **Same—Prior Levies No Defense.**—In an action for the conversion of property by attachment, the fact that at the time defendant's writ was levied writs of other creditors had already been levied thereon, affords no defense.

APPEAL from Taylor.   Tried below before Hon. T. H. CONNER.

*Stanley, Spoonts & Meek,* for appellant.—1. When by trespass or tort a person sustains pecuniary damage, he alone can waive, forgive, release, or recover against the wrongdoer, unless the sufferer is under some legal disability; and he, and not a trustee for him, must bring the suit.   Jackson v. Harby, 65 Texas, 710; Blackwell v. Barnett, 52 Texas, 326; Milling Co. v. Eaton, 86 Texas, 402; Milling Co. v. Meyer, 18 S. W. Rep., 748; Hudson v. Wilkinson, 61 Texas, 606; Stiles v. Hill, 62 Texas, 429; Spoor v. Holland, 8 Wend., 445; Dicey on Parties, Rules 78, 79, mar. pp. 325-352; Willis v. Hudson, 63 Texas, 678-683; Hudson vs. Willis, 65 Texas, 702; Epstein v. Meyer, 18 S. W. Rep.,

592; Field Law of Dam., p. 28, sec. 32; Id., p. 31, sec. 34; Loomis v. Stewart, 24 S. W. Rep., 1078; Duprey v. Ullman, 14 S. W. Rep., 790.

2. The recitals of the deed of trust and of the petitions and judgments in other causes were not sufficient to establish the existence of the indebtedness in fact, being mere declarations; and are not competent against appellant, who was not a party nor privy thereto, and who claims under Donovan & Wylie, as creditors, attacking it as voluntary and fraudulent as to them. Mosely v. Gainer, 10 Texas, 393; McCamant v. Roberts, 66 Texas, 260; Cohn v. Ward, 9 S. E. Rep., 41.

3. Said conveyance is in its terms and nature for the joint benefit of all the beneficiaries pro rata, and not several as to those who accept, conferred only on a joint lien, and contemplates the acceptance of all to make it effective as a lien or conveyance. Lockhart v. Wyatt, 44 Am. Dec., 481; 10 Ala., 231; Elmer v. Sutherland, 7 Ala., 262; Kemp v. Port, 7 Ala., 138; Marston v. Coburn, 17 Mass., 454.

4. The charge of the court ignores the defense pleaded, and fully proven and uncontradicted, that said Northington took all said property from appellee under prior writs, and that appellant had no connection with the original taking; and in effect charges that appellant would be liable for the original taking if it shared in the disposition of the proceeds of the property taken, which is erroneous. Rev. Stats., art. 182; Petty v. Lang, 16 S. W. Rep., 999; Sanger v. Henderson, 21 S. W. Rep., 114.

5. The vacating of the Dougherty & Middleton attachment, by which appellant's lien was advanced from second to first place on the property, could not enlarge nor take away appellee's cause of action, fixed when he was dispossessed of the property. Schooler v. Hutchins, 66 Texas, 324; Blum v. Davis, 56 Texas, 423; Torrey v. Davis, 74 Texas, 116; Thomas v. Chapman, 62 Texas, 193; Bank v. Houts, 19 S. W. Rep., 1080: Petty v. Lang, 16 S. W. Rep., 999; Rev. Stats., art. 182.

6. Appellee can recover of appellant only such damages as will compensate him for the pecuniary loss actually sustained from the acts of appellant, or those acting with and for appellant. Milling Co. v. Meyer, 18 S. W. Rep., 748; Hudson v. Wilkinson, 61 Texas, 606; Stiles v. Hill, 62 Texas, 429; Field on Dam., sec. 822, p. 656.

*Charles I. Evans,* for appellee.—The levy of appellant's writ of attachment on the goods for the benefit of appellant, at the instance of appellant's attorney; the giving of an indemnifying bond by appellant to the sheriff who made the levy; the subsequent detention of the goods by the sheriff, holding them by virtue of appellant's writ; the foreclosure of the attachment lien and the sale of the goods under its order of sale, and the receipt and acceptance by appellant of a part of the proceeds of that sale, with full knowledge of all the facts showing appellant's title, and that the goods were not subject to appellant's writ, render the appellant liable for the value of all the goods so converted, regardless of the fact that the goods were already in the sheriff's pos-

session by virtue of prior wrongful levies when the appellant's writ was levied.    Allred v. Bray, 41 Mo., 484; Hilliard v. Wilson, 65 Texas, 290.

STEPHENS, ASSOCIATE JUSTICE.—This suit was originally brought by the appellee against Sanger Bros., the Martin-Brown Company, and the sheriff of Taylor County, to recover, as for joint trespass and conversion, the value of a stock of goods conveyed and delivered by Donovan & Wiley to the appellee, as trustee, to secure the payment of certain debts then about to become due from Donovan & Wiley to J. W. Carter and other preferred creditors of Donovan & Wiley.

For want of evidence tending to show a joint liability on the part of Sanger Bros. so as to warrant the submission of that theory of liability to the jury, the judgment obtained against all of said parties defendant was, on former appeal to this court, reversed and the cause remanded.  Sanger Bros. et al. v. Henderson, 1 Texas Civ. App., 412.

Thereupon appellee Henderson, for a valuable consideration, released Sanger Bros. from liability, and by an amended petition sought and obtained a recovery against the other defendants for the value of the stock of goods, with interest, excluding those covered by the Sanger levy; from which judgment in the sum of $15,672 this appeal is prosecuted.

· The deed of trust under which the actual possession of said stock of goods was delivered to Henderson, trustee, provided, in substance, that in default of the payment of the indebtedness therein secured, it should become his duty to enforce the said trust by a sale of said property in the manner therein stated; and after paying the costs and expenses incurred in the care and sale thereof, to pay the creditors therein named the full amount of their claims, if possible, and if not, then to pay them pro rata; and if any surplus remained, to return it to Donovan & Wiley, or to such other person or persons as might be in law entitled to receive the same.

At the date of this conveyance and delivery of possession, July 26, 1884, Donovan & Wiley were insolvent, owing various other creditors, including the Martin-Brown Company and Sanger Bros., and having no other property subject to execution.

J. W. Carter, whose debt exceeded in amount the value of the stock of goods, after deducting the value of the Sanger levy, through his attorney in fact thereunto duly authorized, accepted as a beneficiary under said deed of trust at the time of its execution and delivery, and before the trustee was dispossessed.   The other preferred creditors all failed and refused to accept.

The first levy made upon the stock of goods was that in favor of Sanger Bros., and covered a lot of clothing valued at $3250.  The second levy made, and upon the same day, was in favor of Daugherty & Middleton, and covered the entire stock of goods, subject to the prior levy. On the following day (July 27, 1884), and after the trustee had been

entirely dispossessed by the prior levies, and while the sheriff was in the full possession of the property, the levy in question, in favor of the Martin-Brown Company, was made upon the entire stock of goods, subject to prior levies. This levy, however, was not made subject to the deed of trust, as provided by statute in cases where the defendant in the execution is not entitled to the possession of the property. Rev. Stats., art. 2292.

A few days after this levy, the Daugherty & Middleton attachment was released, and the property was then held by the sheriff under the other levies for several months, when, upon the foreclosure of the several attachment liens, to wit, that of Sanger Bros. on the lot of clothing described in the return on the attachment writ, and that of the Martin-Brown Company on the entire stock, subject to the Sanger Bros. levy, as well as those of certain subsequent attaching creditors, the goods were all sold under an order of sale issued in favor of the Martin-Brown Company (though the sheriff held orders of sale also in favor of the other plaintiffs), and the proceeds of sale distributed among the several attaching creditors. The sale was made in this manner without any direction from the Martin-Brown Company; and in receiving its share of the proceeds of the sale, it does not appear that it had knowledge of the manner in which the sale had been made, though the circumstances were probably sufficient to charge it with such knowledge.

No evidence was offered tending to show that any of the debts secured by the deed of trust were fictitious, or that there was any fraud in that transaction.

In levying the Martin-Brown Company attachment, the sheriff exacted and obtained from the plaintiff in the writ an indemnifying bond; and no other conclusion could reasonably be drawn from the testimony than that said company through its general attorney contemplated, in placing the attachment in the hands of the sheriff, that he would levy it upon the property in question; and it was also known to him that the sheriff continued to hold said property by virtue of said levy, under the circumstances stated above, up to the time of the foreclosure proceedings.

The verdict of the jury is fully warranted by the evidence in the amount of the recovery, as well as upon all the other issues submitted by the charge.

We further conclude, that under the proof, if Henderson was entitled to maintain this suit for the value of the goods, no other verdict could properly have been rendered.

*Conclusions of Law.*—1. In the former opinion, we held that the pledge of the goods to appellee Henderson entitled him to maintain an action for their conversion against the sheriff and attaching creditors. As the contention is again urged that he can not, though rightfully in actual possession as trustee under the mortgage, maintain this

suit, we cite, in further support of the conclusion there announced, the cases of Scott v. McDaniel, 67 Texas, 315, and Schmick v. Bateman, 77 Texas, 326, which, with authorities there cited, would seem to be conclusive of the question, unless, since the decision in Milling Company v. Eaton, Guinan & Co., 86 Texas, 401, an acceptance by all the beneficiaries in the preferential deed should be deemed a prerequisite to a valid pledge. While that case holds that acceptance on the part of the trustee alone is not sufficient, it does not hold that all the preferred creditors whom the debtor attempts thus to secure must, or none can, accept.

It is our construction of the mortgage in question, that Donovan & Wiley intended thereby, as far as they could, to secure the payment in full of each of the creditors therein named, and that they did not intend to condition the rights of any of them upon the acceptance of others; and when J. W. Carter accepted the benefits offered, the instrument at once took effect as to him. If others did not see fit to avail themselves of the preference extended, as to them only it did not take effect. Upon his acceptance, Henderson held the goods in trust for him, subject of course to the right of others to accept. While the instrument was one, it contained as many offers for acceptance or rejection as there were creditors named therein.

2. We consider next the rule for measuring the damages. Mr. Jones, in his work on Pledges, sections 433, 434, lays it down, that "In an action by a pledgee of goods against a third party for their conversion, the measure of damages is the full value of the goods. This rule is founded on the consideration, that for all beyond the debt for which the goods are pledged the pledgee is responsible to the pledgor. Thus, if the goods held in pledge be seized and sold on an execution by a creditor of the pledgor, without statutory authority, the measure of damages in a suit by the pledgee against the officer is the value of the property, and not the amount of his demand secured by the pledge. In such case the officer is a trespasser, and must be regarded as a stranger, and therefore liable for the full value of the goods. But on the other hand, if the officer seize the goods in a lawful manner, he is to be regarded as acting in privity with the pledgor, and in that case the pledgee would not be answerable over for the surplus above the debt due to himself, and the officer would be answerable to the pledgee for only the value of his special interest in the goods. The solution of the question, whether the officer would be answerable to the pledgee for for the full value of the goods, or only for the value of his interest as pledgee, depends upon the question, whether the officer is pursuing a proper and legal course in seizing the goods."

The authorities cited by the author fully sustain the text, and this rule seems to have been distinctly recognized in the case of Hudson v. Wilkinson, 61 Texas, 606; but if the damage is to be measured by the value of the property only when it does not exceed the amount of the debt secured, the result in this case would be the same, because the

debt of Carter, the only accepting creditor, was far in excess of the value of the goods remaining after the first levy; that is, that debt, with interest, exceeded by several thousand dollars the value of the property, with interest; and so the jury must have found.

3. As to the defense founded upon the statute of limitations, we find nothing in this record to indicate that the same cause of action stated in the amended petition had not been stated in the original, for which it was substituted, but to the contrary, so far as the contents of the original petition may be gathered inferentially.

4. As to the errors assigned to the admission in evidence of the deed of trust from Donovan & Wiley to Henderson, and the judgments subsequently obtained upon the debts therein secured, we find that the execution of this conveyance was fully proven by the attorney who drafted it, and that its genuineness was clearly established by the bookkeeper of Donovan & Wiley, who was familiar with their handwriting. The testimony of this bookkeeper, especially in connection with the recital in the deed of trust, proved the existence of the debts therein specified. As no effort was made on the trial to show that any of these debts were fictitious, the deed of trust itself was competent, even without the testimony of the bookkeeper, to make a prima facie case.

The alleged error in admitting the judgments subsequently rendered to further confirm the existence of the debts, as no evidence was offered to controvert the primi facie case already established by competent evidence, would not require the judgment to be reversed. Without this evidence the verdict must have been the same.

Also, if there was an error in excluding parol evidence of the contents of telegrams sent by appellant's attorney in relation to the sale of the goods, after they had been held for several months under its wrongful attachment, which we do not hold or intimate, it could not require the judgment to be reversed, because, if the sale had been never so regular, a clear case of liability was shown by the previous wrongful taking and detention of the goods.

5. The errors assigned to the giving and refusing charges are probably not well taken; but if sustained they would not, in view of our final conclusion of fact, require a reversal of the judgment.

It follows from these conclusions, both of law and fact, that the twenty-one assignments of error upon which this appeal has been submitted must all be overruled, and the judgment affirmed.

*Affirmed.*

Delivered October 31, 1894.

### ON MOTION FOR REHEARING.

STEPHENS, ASSOCIATE JUSTICE.—In so far as this motion calls for a finding of facts about which there is no dispute, such as the dates of filing the original and amended petitions, and the contents of the deed

of trust copied in the record, it seems to be founded upon a misconception of the duties of this court.

In so far as it complains of the findings made as being improper deductions from the evidence, it seems to be founded upon a misconception of the contents of this record, so much so that we deem it proper, in view of the great length of the motion, and numerous statements therein made of that character, to invite attention to one, at least, of these several misleading statements.

The third contention of the motion is, that "the court erred in its finding that J W. Carter accepted under said mortgage, as there is and was no proof that he ever saw or heard of the mortgage until after appellant levied its writ," etc.

Witness Kirkland, who drew the mortgage, after testifying that Carter had expressly authorized him (Kirkland) to accept for him (Carter) under the deed of trust, further testified, "I accepted for J. W. Carter." This was all prior to any levies. This testimony was uncontradicted, and placed, we think, the matter of acceptance, so far as Carter was concerned, beyond any sort of controversy.

The contention that appellant occupied a better position as an attaching creditor, in resisting the suit of the trustee, because at the time appellant's levy was made the trustee had already been dispossessed under prior levies, is clearly untenable. His right to the possession entitled him to recover the goods, or their value, as against any creditor having an attachment levied by a method not authorized by law. Willis v. Satterfield, 20 S. W. Rep., 155.

Adhering to the conclusions of law and fact heretofore filed, we overrule the motion.

*Overruled.*

Delivered December 5, 1894.

Writ of error refused.